UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**HARRY A. PAGAN and**
**HERMINIA PAGAN,**                                  Case No.:

  *Plaintiffs,*

v.

**WELLS FARGO BANK, N.A.,**

  *Defendant,*
_____/

## PLAINTIFFS' COMPLAINT
## WITH JURY DEMAND

1. Plaintiffs, HARRY A. PAGAN ("Mr. Pagan") and HERMINIA PAGAN ("Mrs. Pagan") (collectively "The Pagans" or "Plaintiffs") by and through the undersigned counsel bring this action against Defendant, WELLS FARGO BANK, N.A. ("Wells Fargo"), for violations of the Electronic Funds Transfer Act, ("EFTA"), 15 U.S.C. § 1693, *et seq.* and other common law claims such as Breach of Contract.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Supplemental jurisdiction exists over Plaintiff's Breach of Contract claims under 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Broward County, Florida.

## PARTIES

5. Plaintiffs are each natural persons who, always relevant to this action, have been and

are residents of Broward County, Florida.

6. Plaintiffs are each a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

7. Wells Fargo is a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

8. Because Defendant conducts business within the State of Florida, personal jurisdiction is established.

9. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiffs resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendant conducted business within this judicial district at all times relevant.

## STATUTORY FRAMEWORK AND PURPOSE

**The EFTA**

10. The purpose of the Electronic Fund Transfers Act is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." *See* 15 U.S.C. § 1693(b)(1988). Its primary objective "is the provision of individual consumer rights." *Id. See Curde v. Tri-City Bank Trust Co.*, 826 S.W.2d 911 (Tenn. 1992).

11. The EFTA is aimed at reducing "potential fraud by mandating measures that could alleviate problems associated with conducting fund transfers without any human interaction." *See Foreman v. Bank of Am.*, 401 F. Supp. 3d 914, 923 (N.D. Cal. 2019).

12. The "lack of a written record" and the "absence of any human contact" in electronic fund transfers were factors that "motivated Congress to pass the EFTA.") *See Id.* (citing *Kashanchi v. Texas Commerce Med. Bank*, 703 F.2d 936, 940–41 (5th Cir. 1983).

13. Congress passed the EFTA because of its concern that electronic transactions were "much more vulnerable to fraud, embezzlement, and unauthorized use than the traditional payment

methods." *See Id.* (citing H.R. Rep. No. 95–1315, at 2 (1978)).

14. "The legislation was designed to create rights for the consumer and help bring certainty to an era of banking which was fast becoming faceless, an era wherein banking could be conducted almost exclusively through machines.") *See Id.* (quoting *Spain v. Union Tr.*, 674 F. Supp. 1496, 1500 (D. Conn. 1987) (citing S. Rep. No. 95-915, at 3 (1978)).

15. "EFTA requires a bank to investigate such disputed transactions, to notify the customer if it has verified the transactions as authorized, and to recredit the account if the withdrawals were unauthorized; failure to do so renders the bank liable to the customer for up to treble damages." *See Merisier v. Bank of Am., N.A.*, 688 F.3d 1203, 1204 (11th Cir. 2012).

16. The EFTA requires that "[f]or each electronic fund transfer initiated by a consumer from an electronic terminal, the financial institution holding such consumer's account shall, directly or indirectly, at the time the transfer is initiated, make available to the consumer written documentation of such transfer." *See* 15 U.S.C. § 1693d(a). The EFTA also requires that "[i]f a financial institution, within sixty days after having transmitted to a consumer documentation . . . receives oral or written notice in which the consumer" provides adequate notice of an error "the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." *See* 15 U.S.C. § 1693f(a).

17. "Under the EFTA, 'electronic fund transfer' essentially means any transfer of funds initiated through a computer terminal or telephone, where a financial institution is authorized to debit or credit an account. *See* 15 U.S.C. § 1693a(7). This includes point-of-sale transfers (i.e., debit card transactions), ATM transactions, direct deposits, and telephonic transfers. Id." *Charvat v. Mut. First Fed. Credit Union*, 725 F.3d 819, 822 n.1 (8th Cir. 2013).

18. An action pursuant to the EFTA must be commenced "within one year from the date of the occurrence of the violation." *See* 15 U.S.C § 1693m(g). With respect to a failure to investigate claim, "'[i]n light of the ten-day statutory period within which a financial institution must provide a response,' the statute of limitations begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." *See Golden-Koether v. JPMorgan Chase Bank, N.A.*, No. 11-3586 (MLC), 2011 WL 6002979, at *2 (D.N.J. Nov. 29, 2011) (citing *Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 145 (D. Mass. 2005)).

**FACTUAL ALLEGATIONS**

19. At all times relevant to the complaint, Plaintiffs had a joint checking account with Wells Fargo ending in 5427 ("Joint Account.")

20. Plaintiffs' account was primarily for personal, family and household use. It was not a business or commercial account.

21. Mr. Pagan is the victim of identity theft, which has led to Mr. Pagan's personal identifying information (PII) being used to access his Joint Account and complete fraudulent unauthorized transfers to at least one additional fraudulent checking account and savings account opened using Mr. Pagan's PII.

22. The numbers of the fraudulent accounts end in 1881 and 2157 ("Fraudulent Accounts.")

23. Based on information and belief, the perpetrator gained unauthorized access to Mr. Pagan's PII because of a data breach that occurred at the University of Miami in April of 2021.

24. The perpetrator used this information to transfer and withdraw $7,854.49 from the Joint Account.

25. The dates and amounts of the fraudulent transactions were:

   a. $3,600 which occurred between May 9, 2022 and August 30, 2022; and

   b. $4,254.49 which occurred between May 17, 2022 and August 31, 2022.

26. The Pagans contacted Wells Fargo on September 30, 2022 regarding the $4,254.49 in fraudulent transactions, which resulted in a claim being opened by Wells Fargo.

27. On October 4, 2022, Wells Fargo denied the fraud claim related to the $4,259.49 in fraudulent transactions ("Fraud Denial.") *See* Exhibit "A."

28. On October 14, 2022, Wells Fargo denied a separate fraud claim, which the Pagans were contesting all transactions related to Fraudulent Accounts. The October 14, 2022 denial appeared with the following image and information:



29. Plaintiffs disputed the fraudulent transfers with Wells Fargo, but since Wells Fargo has refused to treat the transactions as unauthorized, Mr. Pagan sent a fax to Wells Fargo which pleaded for reconsideration ("Reconsideration Letter.") A redacted copy of the Reconsideration Letter is attached as Exhibit "B."

30. Wells Fargo's claim denials and attempts to hold either one or both of the Plaintiffs liable directly violates the EFTA which protects consumers from liability for unauthorized transfers.

31. Wells Fargo violated the EFTA by denying claims of unauthorized transactions without notifying Plaintiffs of their right to request the documents reviewed during the investigation.

32. Plaintiffs never authorized the fraudsters to withdraw or transfer money from the Joint Account in any form contemplated by the EFTA.

33. Mr. Pagan showed he was the victim of identity theft based on the data breach described in his Reconsideration Letter. *See* Exhibit "B."

34. Additionally, a Wells Fargo employee Ashley Millan-Chatman concurred and agreed "to all the statements made" by Mr. Pagan in the Reconsideration Letter. *See* Exhibit "B."

35. Nevertheless, Wells Fargo denied all the fraud claims, contending that the fraudulent transfers were authorized.

36. Wells Fargo never informed Plaintiffs of their right to request documents used in the investigation.

37. Pursuant to the EFTA, liability for unauthorized use is sharply limited.

38. Specifically, 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> a. $50; or
>
> b. the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to

> the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

39. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

40. Moreover, Wells Fargo's relationship with Plaintiffs is subject to a Deposit Account Agreement ("Deposit Agreement"). With respect to Wells Fargo, The Deposit Agreement provides, among other things:

> If you tell us within two business days after you learn of the loss or theft of your card, card number, PIN, or other access device, you can lose no more than $50 if someone used your credentials without your permission (however, see "Zero Liability protection" in the "Debit Cards and ATM Cards" section of this Agreement).
>
> If you **do NOT** tell us within two business days after you learn of the loss or theft of your card, card number, PIN, or other access device, and we can prove we could have stopped someone from using your credentials without your permission if you had told us, you could lose up to $500 (however, see "Zero Liability protection" in the "Debit Cards and ATM Cards" section of this Agreement).
>
> Also, if your account statement shows transfers that you did not make or authorize, including those made by your card, card number, PIN, other access device, or other means, tell us at once. If you do not notify us within 60 days after the statement was mailed or was otherwise made available to you, you will be liable for any additional unauthorized transactions that occurred after the 60-day period and before you provided notice to us (if we can prove we could have stopped those transactions had you promptly notified us). This will apply even to unauthorized transactions that occur shortly before you notify us. If a good reason (such as a long trip or hospital stay) kept you from telling us, we will extend the time periods.

41. Wells Fargo's policies and practices of: failing reasonably investigate unauthorized transfers resulting from fraudulent access to a consumer's account; failing to notify the consumers of their rights to request reproductions of all documents which the financial institution relied on to conclude that such error did not occur; and holding consumers responsible for more than the $50 maximum are violations the EFTA.

42. Plaintiffs have experienced anxiety, anger, and frustration over losing access to the funds in the Joint Account.

## COUNT I – VIOLATIONS OF 15 U.S.C. §1693f(e) AGAINST WELLS FARGO

43. Plaintiffs incorporate by reference paragraphs 1 – 42 as if fully set forth herein.

44. The EFTA and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

45. The EFTA and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

46. Regulation E section 1005.2(i) defines financial institutions under EFTA and Regulation E to include banks, savings associations, credit unions, and: any other person that directly or indirectly holds an account belonging to a consumer. *See* 12 C.F.R. 1005.2(i).

47. Plaintiffs' contacts with Wells Fargo where they explained that neither one of them authorized the transfers constituted notification to Wells Fargo of an error under § 1693f.

48. As a result of a notification complying with § 1693f, Wells Fargo was obligated to investigate the errors and determine whether any errors had occurred.

49. After the investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id*.

50. If a financial institution provides a provisional credit in the first 10 days for the amount disputed, then the financial institution is afforded forty-five (45) days after receipt of notice of error to investigate. *Id*. § 1693f€.

51. Under the EFTA, an error includes "an unauthorized electronic fund transfer." *Id*. § 1693f(f).

52. Because Plaintiffs did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

53. These transactions do not qualify for the exception under §1693a(12)(A) because Plaintiffs did not "furnish" the fraudster with access to any of their accounts; instead, as provided in 12 C.F.R. § 1005.2, the transfers were initiated by a person who obtained access from Plaintiffs through fraud and therefore constitute unauthorized electronic fund transfers. *See, e.g.,* Official Interpretation of the Regulation E, regarding 12 C.F.R. 1005.2(m)(3).

54. As a direct and proximate result of Wells Fargo's violations of the EFTA, Plaintiffs are entitled to an award of statutory and actual damages as well as attorney's fees and costs.

55. Because Wells Fargo did not provisionally recredit Plaintiffs' account within the 10-day period specified in §16€(c) and did not make a good faith investigation of the alleged error, Defendant's conduct violates §1693f(e), entitling Plaintiffs to treble damages.

56. Additionally, because Wells Fargo did not have a reasonable basis for believing that Plaintiffs' account was not accessed in error, Wells Fargo's conduct violates § 1693f(e), entitling Plaintiffs to treble damages.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant for:

a. Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b. Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c. Treble damages pursuant to 15 U.S.C. § 1693f(e);

d. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e. All other relief the Court deems just and proper.

## COUNT II – VIOLATIONS OF 15 U.S.C. §1693f(d) AGAINST WELLS FARGO

57. Plaintiffs incorporate by reference paragraphs 1 – 42 of this Complaint as if fully set forth herein.

58. Plaintiffs contacts with Wells Fargo during the relevant time period where they explained that neither of them authorized the transfers constituted notification to Wells Fargo of an error under § 1693f.

59. Under the EFTA, an error includes "an unauthorized electronic fund transfer." *Id*. § 1693f(f).

60. Because Plaintiffs did not give actual authority to the fraudster to initiate the transfers, the transactions initiated by the fraudster constituted unauthorized electronic fund transfers under §1693a(12).

61. As a result of a notification complying with § 1693f, Wells Fargo was obligated to investigate the error and determine whether an error has occurred.

62. When Wells Fargo determined that an error did not occur, it was obligated to deliver or mail Plaintiffs an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of Plaintiffs promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. § 1693f(d).

63. Wells Fargo has never delivered or mailed Plaintiffs any materials related to its determination that an error did not occur.

64. As reflected in the drafting of §1693f(d), a critical part of a good faith investigation under the EFTA is informing the subject of the investigation of the reasons for the finding and the documents relied upon in making determinations.

65. Wells Fargo's failure to do so prevents accountholders like Plaintiffs from learning the full basis for Wells Fargo's decision, potentially limiting their ability to successfully resolve their dispute, pursue their full rights, obtain additional information about the allegedly unauthorized charges, and fully understand the reasons for the adverse resolution of the dispute.

66. A consumer's right to the notice in question—*i.e.* notice of the right to examine the documents relied upon by the Bank in making the adverse determination—is a procedural right which protects Plaintiffs' concrete interests. Violation of that right presents a "risk of real harm" to that concrete interest.

67. Failure to comply with §1693f(d)'s requirement of the documents used in the investigation entitles Plaintiffs to statutory damages pursuant to § 1693m(a) as well as attorney's fees and costs.

68. For the reasons explained above, Wells Fargo's failure to provide the reasons for its error determinations also constitutes a failure to make a good faith investigation, a violation of § 1693f(e), entitling Plaintiffs to treble damages.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant for:

a. Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b. Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c. Treble damages pursuant to 15 U.S.C. § 1693f(e);

d. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e. All other relief the Court deems just and proper.

## COUNT III – VIOLATIONS OF 15 U.S.C. §1693g AGAINST WELLS FARGO

69. Plaintiffs incorporate by reference the allegations in paragraphs 1 – 42 as if fully stated herein.

70. The EFTA places sharp limitations on consumer liability for unauthorized transactions. § 1693g.

71. By holding Plaintiffs responsible for the full amount of the unauthorized transfer rather than the limits set forth by § 1693g(a), Wells Fargo has violated the EFTA.

72. Failure to comply with the limits set forth by §1693g(a) entitles Plaintiffs to statutory damages pursuant to § 1693m(a) as well as attorney's fees and costs.

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant for:

a. Actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

b. Statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

c. Treble damages pursuant to 15 U.S.C. § 1693f(e);

d. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3); and,

e. All other relief the Court deems just and proper.

## COUNT IV - BREACH OF CONTRACT

73. Plaintiff incorporates by reference the allegations in paragraphs 1 – 42 as if fully stated herein.

74. The Deposit Agreement provides, among other things "[i]f you tell us within two business days, you can lose no more than $50 if someone used your card, PIN or code without your permission. If you do NOT tell us within two business days after you learn of the loss or theft of your card, PIN or code and we can prove we could have stopped unauthorized transactions if you had told us, you could lose as much as $500."

75. By failing to limit Plaintiffs' losses to those amounts set forth in the Deposit Agreement, Defendant materially breached the Deposit Agreement.

76.     As a direct and proximate result of Defendant's breach of the Deposit Agreement, Plaintiffs lost more funds than they should have as a result of unauthorized transfers, and they are entitled to an award of actual damages, compensatory damages, and punitive damages.

## JURY DEMAND

77.     Plaintiffs demand a trial by jury on all issues so triable.

Dated: October 4, 2023.

Respectfully Submitted,

**SHARMIN & SHARMIN, P.A.**

*/s/ Kevin Rajabalee, Esq.*
Fla. Bar. No. 119948
kevin@sharminlaw.com
Eiman Sharmin, Esq.
FBN: 716391
eiman@sharminlaw.com
830 North Federal Highway
Lake Worth, FL 33460
Main: 561-655-3925
Direct: 561-296-9109
Fax: 844-922-1022

*Attorneys for Plaintiffs*